# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN R. JONES,<br><br>                Plaintiff,<br>   v.<br><br>GEMALTO, INC.,<br><br>                Defendant. | CIVIL ACTION<br>NO. 15-00673 |

**PAPPERT, J.**                                                                         **JUNE 29, 2015**

## MEMORANDUM

Plaintiff John R. Jones ("Jones") asks the Court, for the second time, to provide redress for alleged discriminatory treatment and a physical assault he allegedly endured during his prior employment with Defendant Gemalto, Inc. ("Gemalto"). Gemalto removed this action from the Montgomery County Court of Common Pleas and then moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Jones moved to remand the complaint pursuant to 28 U.S.C. § 1447. The Court considers both Jones' motion to remand and Gemalto's motion to dismiss. For the reasons that follow, Jones' motion to remand is denied and Gemalto's motion to dismiss is granted.

### I.   Factual and Procedural Background

Jones, an African American individual, began working as a feeder operator at Gemalto's manufacturing plant in Montgomeryville, Pennsylvania on October 12, 1996. (Compl. ¶¶ 5-6.) During his employment, Jones repeatedly requested to be trained as a press operator, which is a higher paid position than feeder operator. (*Id.* ¶ 8.) Jones was never trained, even though less senior Caucasian workers received this training. (*Id.* ¶¶ 9, 10.)

On September 30, 2010, Gemalto held a meeting during which management promised to improve promotional practices in the company and sought employee input. (*Id.* ¶ 12.) Jones

voiced his concern that he and other African American employees were being denied opportunities to train on the printing press because of their race. (*Id.* ¶ 13.) After the meeting, Jones was assured by Joe Wright, the printing manager, that he would receive training on the press. (*Id.* ¶ 14.) Michelle Giordano, the human resources manager, scheduled a meeting with Jones to further discuss his concerns. (*Id.* ¶ 15.)

Jones never received the promised training, despite renewing his requests with Wright and Giordano. (*Id.* ¶ 16.) Instead, his performance and workplace movements were subjected to enhanced scrutiny and criticism. (*Id.* ¶ 17.) Ed Vega, Jones' supervisor, verbally abused Jones and falsely accused him of failing to properly do his job. (*Id.* ¶ 18.)

Vega's alleged harassment came to a head on April 28, 2011. As Jones returned from the bathroom, "Vega accused him of wasting time by walking around too much." (*Id.* ¶ 19.) Jones attempted to explain that he was returning from the bathroom and Vega asked Jones to step into his office. (*Id.* ¶ 20.) Jones entered Vega's office to continue the discussion. (*Id.* ¶ 21.) Jones complained about Vega's harassment, the conversation became heated, and Vega physically attacked Jones. (*Id.* ¶¶ 22-23.) Jones defended himself and then fled Vega's office and the plant. (*Id.* ¶ 24.) Jones went directly to the hospital to obtain treatment for the injuries he sustained. (*Id.* ¶ 25.) Gemalto took a statement from Vega regarding the incident, but did not contact Jones and did not respond to attempts by Jones' attorney to contact the company. (*Id.* ¶¶ 26-27.) Jones was notified on May 2, 2011 that his employment had been terminated. (*Id.* ¶ 28.) Jones was subsequently arrested and charged with assault.[1] (*Id.* ¶ 30.)

Jones, through his attorney, filed an action on November 3, 2011, alleging racial discrimination in violation of Title VII based upon Jones' inability to obtain training as a press operator and retaliatory discharge in violation of Title VII based upon Jones' termination ("*Jones*

---

[1] Jones was acquitted on January 18, 2012. (*See* Compl., Ex. B.)

*I*"). *See Jones v. Gemalto*, No. 11-cv-06902, ECF No. 1. The case was assigned to the Honorable John R. Padova, who granted summary judgment in favor of Gemalto on both counts. *See Jones v. Gemalto*, No. 11-cv-06902, 2013 WL 1194518 (E.D. Pa. Mar. 25, 2013).

Nearly two years later, Jones filed this action ("*Jones I*") against Gemalto in the Montgomery County Court of Common Pleas based, again, on the facts described above. Jones now alleges three claims arising under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 *et seq.*: (1) failure to train and promote, (2) discrimination and harassment, and (3) hostile work environment; as well as three claims arising under Pennsylvania common law: (1) assault and battery, (2) wrongful discharge, and (3) emotional distress. Gemalto removed the action on the basis of diversity jurisdiction (ECF No. 1), and then moved to dismiss the complaint, arguing that Jones' claims are barred by the doctrine of res judicata and by the applicable statutes of limitation. (ECF No. 5.) In response, Jones moved to remand, asserting that removal was improper because Gemalto is a citizen of Pennsylvania, like Jones, and the amount in controversy does not exceed $75,000. (ECF No. 7.) Jones then filed an opposition to Gemalto's motion to dismiss. (ECF No. 8.) The Court considers[2] Jones' motion to remand and Gemalto's opposition (ECF No. 9), as well as Gemalto's motion to dismiss and Jones' opposition.[3] (ECF No. 8.)

## II. Plaintiff's Motion to Remand

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Thus a defendant

---

[2] The Court is mindful of the fact that Jones is proceeding *pro se* and liberally construes his submissions. *See Zilich v. Lucht*, 981 F.2d 694, 694 (3d Cir. 1992) ("When . . . plaintiff is a pro se litigant, we have a special obligation to construe his complaint liberally.").

[3] Pursuant to Local Rule of Civil Procedure 7.1(c) and Federal Rule of Civil Procedure 6(d), Jones' opposition to Gemalto's motion to dismiss was due on March 6, 2015. It was not filed until March 18, 2015. The Court will nonetheless consider the merits of Jones' untimely opposition.

may remove from state court to federal court a civil case between citizens of different states in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

A plaintiff may challenge the removal by moving to remand the case to state court. 28 U.S.C. § 1447(c). Grounds for remand include: "(1) lack of subject matter jurisdiction or (2) a defect in the removal process." *PAS v. Travelers Ins. Co.*, 7 F.3d 329, 352 (3d Cir. 1993). "The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett v. KIA Motors Am. Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993)). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statue should be strictly construed and all doubts resolved in favor of remand." *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013) (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)).

Here, Plaintiff contends, without providing any factual support, that the Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because both parties are citizens of Pennsylvania and the amount in controversy does not exceed $75,000.

    *a. Gemalto's Citizenship*

"A corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C § 1332(c). A corporation's principal place of business refers "to the place where a corporation's officers direct, control, and coordinate the corporation's activities," otherwise known as the "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010). The nerve center "should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

Gemalto asserts that it "is incorporated in the State of Delaware with its principal place of business at 9442 Capital of Texas Highway North, Plaza II, Suite 100, Austin, TX 78759." (Not. Removal, 2.) Gemalto supports this assertion with the Declaration of Prakash Patel ("Patel Declaration"), a Senior Human Resources Generalist at Gemalto's location in Montgomeryville, Pennsylvania. (*See* Not. Removal, Ex. B.) Jones asserts that Gemalto is a citizen of Pennsylvania because its "principal place of business is located at 101 Park Drive Montgomeryville, Pennsylvania." (Mot. Remand 2.) Jones provides no factual support for this assertion. Rather, it appears that he made this assertion because Gemalto operates a manufacturing plant, at which he used to work, in Montgomeryville, Pennsylvania.[4] The presence of a manufacturing plant is not indicative of the location of a corporation's principal place of business. A corporation may have only one principal place of business, *Hertz*, 559 U.S. at 93, and Plaintiff has not challenged Defendant's assertion that its principal place of business is located in Texas.[5]

Gemalto has shown that it is a citizen of Delaware, its state of incorporation, and Texas, the location of its principal place of business. *See Salzman v. QVC Networks, Inc.*, No. 93-cv-2493, 1993 WL 313524, at *1 (E.D. Pa. Aug. 6, 1993) (determining the uncontested location of QVC's principal place of business based on the "declaration of Mr. Neal S. Grabell, QVC's Senior Vice President, General Counsel and Secretary"). Because Gemalto is not a citizen of Pennsylvania and Jones admits that he is a citizen of Pennsylvania, (Mot. Remand 2), the parties are diverse.

---

[4] Gemalto's website defines its location in Montgomeryville, Pennsylvania as a "manufacturing plant." *See* http://www.gemalto.com/companyinfo/offices-locator (last visited June 25, 2015). Jones likewise stated that "Gemalto's main manufacturing facility is located at 101 Park Drive, Montgomeryville, PA." (Compl. ¶ 4.)

[5] The Eastern District of Texas has previously observed that "Gemalto's United States headquarters, Gemalto, Inc., is located in Austin, Texas." *Gemalto S.A. v. HTC Corp.*, No. 6:10-cv-561, 2011 WL 5838212, at *1 (E.D. Tex. Nov. 18, 2011).

b. *Amount in Controversy*

Jones asserts that Gemalto's calculation as to Jones' back pay damages "is too speculative" to demonstrate that the amount in controversy exceeds $75,000.[6] (Mot. Remand 2.) A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 551 (2014) (citing 28 U.S.C. § 1446(c)(2)); *see also Spahr v. 3M Co.*, No. 15-cv-1822, 2015 WL 3555332, at *2 (E.D. Pa. June 8, 2015). "If the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Id.* at 553-54. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554.

Gemalto alleged "In his prayer for relief, Plaintiff seeks reinstatement, back pay, and compensatory damages in an amount in excess of $50,000. At the time of his termination, Plaintiff earned $20.47 per hour and worked approximately 40 hours per week. Plaintiff seeks back pay from his April 29, 2011 date of termination. Such back pay damages alone, if awarded, would exceed the required amount in controversy." (Not. Removal 2) (citations omitted.) The Patel Declaration affirms that Jones earned $20.47 per hour and worked on average 40 hours per

---

[6] Jones also asserts that "The Complaint seeks compensatory damages in an amount in excess of $50,000 which does not exceed the required $75,000 jurisdictional minimum." (Mot. Remand 2.) While this is an accurate recitation of a majority of the "wherefore" clauses in the complaint, Jones' demand, which is designed to avoid the arbitration requirements in state court, does not expressly limit the amount in controversy to an amount less than $75,000. "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 551 (2014) (citing 28 U.S.C. § 1446(c)(2)(A)). Jones cannot rely on his open-ended allegation to avoid Gemalto's assertion that the amount in controversy exceeds $75,000.

6

week. (Not. Removal, Ex. B.) Gemalto has met it burden to put forth plausible allegations that the amount in controversy exceeds $75,000.[7]

Jones' unsupported contention that the calculation of back pay is "too speculative" cannot be fairly read to contest Gemalto's amount in controversy allegations. Jones demanded back pay in the complaint and he does not challenge Gemalto's articulation of his hourly wage or the average number of hours he worked. Simple arithmetic is not "too speculative." The Court accordingly accepts Gemalto's allegation that the amount in controversy exceeds $75,000. *See Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 553 ("When a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the Court.").

The parties are diverse and Gemalto has shown that the amount in controversy exceeds $75,000. The Court accordingly has subject matter jurisdiction over Plaintiff's claims. The motion to remand is denied.

### III. <u>Gemalto's Motion to Dismiss</u>

To withstand a motion to dismiss, the complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 210-11 (citation omitted). A motion to dismiss will be granted if the factual allegations in the complaint are insufficient "to raise the right of relief above the speculative level." *W. Run*

---

[7] Jones was terminated approximately 46 months before Gemalto removed the action, thus, his back pay amounted to approximately $162,000 at the time of removal. Even if Jones had contested Gemalto's allegations, this shows, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.

7

*Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the Court "need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.* 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted).

In the Third Circuit, a motion to dismiss may raise the affirmative defense of res judicata provided the defense is "apparent on the face of the complaint." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). When deciding such a motion, the Court may take judicial notice of the record from a previous court proceeding between the parties. *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) (per curiam).

"In order to prevail on a defense of res judicata, a defendant must demonstrate that there has been: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action." *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 172 (3d Cir. 2009) (citing *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248 (3d Cir. 2006)). "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." *Jackson v. Dow Chemical Co.*, 518 F. App'x 99, 101 (3d Cir. 2013) (citing *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)). In analyzing whether these three elements have been met, courts "[d]o not apply this conceptual test mechanically, but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit. In so doing, we avoid piecemeal litigation and conserve judicial resources." *Blunt v. Lower Merion*

*Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010)).

All three factors are present here. First, the entry of summary judgment in Gemalto's favor in *Jones I* was an adjudication on the merits. *See Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 524 (3d Cir. 1973) (noting summary judgment is a final judgment on the merits for res judicata purposes). Second, the parties are identical to those in *Jones I*.

Finally, the cause of action in *Jones II* is the same cause of action alleged in *Jones I*. Courts take a "broad view of what constitutes the same cause of action." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) (citation omitted). This analysis focuses on the "the essential similarity of the underlying events giving rise to the various legal claims." *Elkadrawy*, 584 F.3d at 173 (quoting *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982)). When measuring the "essential similarity," the Court considers "(1) whether the acts complained of and the demand for relief are the same . . . ; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary for trial are the same . . . ; and (4) whether the *material* facts alleged are the same." *Sheridan*, 609 F.3d at 261 (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). "A party's reliance on different statutes, assertion of different theories of recovery, or seeking different relief in each action is not dispositive for res judicata purposes." *Athlone Indus., Inc.*, 746 F.2d at 984.

The gravamen of the *Jones II* complaint, like that in *Jones I*, is: (1) Gemalto's denial of Jones' requests for training as a press operator, which in turn denied Jones promotional opportunities; (2) Vega's retaliatory verbal abuse and criticism after Jones complained about the discrimination; and (3) Jones' physical altercation with Vega on April 28, 2011 and his allegedly unlawful termination. Jones contends that he provided new supporting factual material in *Jones*

9

*II*. (Pl.'s Opp'n Mot. Dismiss 2.) A side-by-side comparison of the complaints shows that the complaint in *Jones II* does include some facts not alleged in the *Jones I* complaint. These additional facts, however, were part of the record upon which Judge Padova granted summary judgment in *Jones I*. *See generally Jones*, 2013 WL 1194518. Moreover, the additional facts alleged in *Jones II* simply describe the events complained of in *Jones I* in more detail. *See Jackson v. Dow Chemical Co.*, 518 F. App'x 99, 103 (3d Cir. 2013) (per curiam) ("Jackson's addition of some new, nonmaterial facts . . . does not obscure the essential similarity of the two lawsuits."). *Jones II* is based on facts identical to those adjudicated in *Jones I* and will thus require the same witnesses and documents.[8]

The only difference between *Jones I* and *Jones II* is the non-dispositive fact that Jones asserts different legal theories. Jones could have alleged these state law claims in his first complaint, or even amended his complaint to add these new claims,[9] "especially as [many] involve fundamentally similar issues and [all] are alleged against the same lone defendant." *Elkadrawy*, 584 F.3d at 174. Reliance on alternative legal theories is insufficient to avoid the preclusive effect of res judicata when the second action complains of the same acts as the first. *See id.* ("A claim extinguished by res judicata 'includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction *or series of connected transactions*, out of which the action arose.") (quoting Restatement (Second) of Judgments § 24(1) (1982)). *Jones II* is based on the same cause of action as *Jones I* and is accordingly barred

---

[8] The depositions Jones attached to his motion to dismiss which allegedly provide new facts were all conducted in June 2012 as part of the *Jones I* discovery. (*See* Pl.'s Opp'n Mot. Dismiss, Ex. B.)

[9] Jones received a letter from the Pennsylvania Human Relations Commission on January 15, 2013 closing the case administratively and informing Jones that he had two years to file suit. (Pl.'s Opp'n Mot. Dismiss 1.) Judge Padova did not enter summary judgment in favor of Gemalto until March 25, 2013. Jones had time to request leave to amend to add the PHRA claims.

by the doctrine of res judicata. *See Jackson*, 518 F. App'x at 101-03 (affirming district court's dismissal of *pro se* plaintiff's complaint on res judicata grounds). The complaint is dismissed.

An appropriate order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
